UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LAVERNE RICHARDSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-00993-SGC |
| ) | |
| SOCIAL SECURITY ADMINISTRATION, ) | |
| COMMISSIONER, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

The plaintiff, Laverne Richardson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Richardson timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 9). For the reasons that follow, the Commissioner's decision is due to be affirmed.

I.   FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Ms. Richardson was born in 1960 and has a high school education. (R. 30). Her past work experience includes employment as a poultry trimmer, auto trimmer, and molder. (R. at 41-42). Ms. Richardson alleged she became unable to work on June 1, 2012, due to knee and back pain. (R. 28, 32, 128, 151).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination

of whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. §§ pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the Administrative Law Judge ("ALJ") found Ms. Richardson met the insured status requirements of the Social Security Act through June 30, 2014, and had not engaged in substantial gainful activity since the alleged onset of her disability. (R. 13). At step two, the ALJ found Ms. Richardson suffered from the following severe impairments: osteoarthritis, lumbago, and recurrent skin disturbances. (*Id*.). However, the ALJ found Ms. Richardson's medically determinable anxiety did not constitute a severe mental impairment and concluded she did not suffer from fibromyalgia. (*Id.* at 13-15).

At step three, the ALJ found Ms. Richardson did not have an impairment or combination of impairments meeting or medically equal to any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15). Specifically, the ALJ determined Ms. Richardson failed to satisfy the listing requirements for major joint dysfunction and/or disorders of the spine. (*Id.*).

Before proceeding to step four, the ALJ determined Ms. Richardson retained the RFC to perform unskilled light work with the following restrictions: (1) no climbing on ropes, ladders, or scaffolding; (2) no exposure to unprotected heights or hazardous machinery; (3) no more than occasional stooping, crouching, crawling, or kneeling; (4) no more than occasional climbing ramps or stairs; (5) no more than occasional ambulation over uneven surfaces; and (6) no more than frequent interaction with co-workers, supervisors, or the general public. (*Id.* at 15-21). In reaching this conclusion, the ALJ considered Ms. Richardson's symptoms, the medical record, and opinion evidence. (*Id.*). Regarding opinion evidence, the ALJ assigned great weight to the opinion contained in the consultative examination report completed by Dr. Sathyan Iyer (R. 20) but assigned little weight to the opinion contained in the medical source statement completed by Dr. David A. McLain (*Id.* at 20-21). The ALJ concluded that, while Ms. Richardson's medically determinable impairments could reasonably be expected to cause some of the symptoms alleged,

her testimony concerning the severity, persistence, and effects of these symptoms was not credible in light of the medical record. (*Id.* at 17).

At step four, the ALJ determined Ms. Richardson was capable of performing her past relevant work as a poultry trimmer, as that work does not require the performance of work-related activities precluded by her RFC. (R. 21). Even though Ms. Richardson was incapable of performing the full range of light work, the ALJ used Medical-Vocation Rule 202.15 as a guideline for finding the existence of a significant number of jobs in the national economy which she was capable of performing, including storage facility rental clerk, information clerk, and shipping/receiving wares. (*Id.*). In reaching this conclusion, the ALJ relied on the testimony of a vocational expert regarding the effect of the limitations imposed by Ms. Richardson's RFC. (*Id.* at 21-22). The ALJ concluded by finding Ms. Richardson "was not under a 'disability,' as defined in the Social Security Act" since the alleged onset date. (*Id.* at 22).

Ms. Richardson appealed to this court on May 27, 2014. (Doc. 1). Ms. Richardson filed a brief in support of her appeal (Doc. 11), and the Commissioner responded (Doc. 13). All deadlines for submitting briefs have passed, and this matter is ripe for adjudication.

## II.     Standard of Review

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining: (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner; and (2) whether the correct legal standards were applied. *See Richardson v. Perales,* 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The court approaches the factual findings of the Commissioner with deference but applies close scrutiny to the legal conclusions. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or

substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen,* 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n,* 383 U.S. 607, 620 (1966)). Indeed, even if the court finds the evidence preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles,* 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen,* 815 F.2d 622, 624 (11tj Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler,* 748 F.2d 629, 635 (11th Cir. 1984).

**III.   Discussion**

Ms. Richardson asserts the ALJ's decision should be reversed and remanded for two reasons. First, she contends the ALJ improperly evaluated the evidence by giving more weight to medical records that "did not deserve it at the expense of a comprehensive medical evaluation" that did deserve substantial weight. (Doc. 11 at 4). Next, Ms. Richardson argues the ALJ erred in determining her RFC and concluding she could perform past relevant work. (*Id.* at 13-14). Accordingly, Ms. Richardson claims the Commissioner's decision should be reversed and remanded for proper consideration of the evidence. (*Id.*). Alternatively, Ms. Richardson contends the case should be reversed and remanded for the payment of benefits. (*Id.*)

A.     **The ALJ's Evaluation of the Evidence**

Ms. Richardson contends the ALJ improperly evaluated the evidence by giving greater weight to certain medical records at the expense of a "comprehensive medical evaluation" deserving substantial weight. (Doc. 11 at 4). This argument concerns the ALJ's assignment of great weight to the opinion of Dr. Iyer and his assignment of little weight to the opinion of Dr. McLain.

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, the opinion's consistency with the record as a whole, the specialty of the medical source, and other factors. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, greater weight is given to the opinions of treating sources than the opinions of one-time examiners. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Crawford*, 363 F.3d at 1161. More weight is also given to an opinion that is well supported and explained. *See* 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Additionally, more deference is given to an opinion that is consistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). Finally, the opinion of an examining physician is subject to heavy skepticism when it is based primarily on the plaintiff's subjective complaints but is unsupported by the medical evidence. *Crawford*, 363 F.3d at 1159-60.

Underpinning all of the considerations mentioned above is the fact that opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d).

It is the ALJ's responsibility to assess a claimant's residual functional capacity. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Dr. McLain, a Birmingham rheumatologist who is not the plaintiff's treating physician, conducted a general physical examination of the plaintiff on April 23, 2013. (R. 235). Dr. McLain also performed and interpreted x-rays of the plaintiff's hip joints and lumbosacral spine. (*Id.*). Dr. McLain noted in his Physical Capacities Evaluation ("PCE") that the plaintiff could: (1) lift and/or carry ten pounds occasionally and five pounds frequently; (2) sit for four hours in an eight-hour day; (3) stand or walk for one hour in an eight-hour day; (4) never perform pushing or pulling movements of arm and/or leg controls; (5) never climb or balance; (6) never bend or stoop; and (7) never work around hazardous machinery. (R. 240). Dr. McLain opined Ms. Richardson would miss more than four days of work per month and assessed her pain as "virtually incapacitating." (*Id.* at 240-41). Dr. McLain also stated physical movement would "increase her pain to such an extent that bed rest or medication was necessary." (*Id.* at 241).

The ALJ properly gave little weight to Dr. McLain's opinions for several reasons. First, as the ALJ noted, Dr. McLain's findings were not consistent with Dr. McLain's own objective x-ray findings. (R. 20). Dr. McLain's physical examination revealed tenderness in Ms. Richardson's lumbar spine, hips, and knees, while the x-rays revealed only mild to moderate osteoarthritis of her hips and knees. (R. 18, 238-39). The ALJ properly concluded these objective findings did not support the extreme limitations imposed by Dr. McLain's PCE. Importantly, while the ALJ gave very little weight to Dr. McLain's opinions, he did afford great weight to Dr. McLain's objective x-ray findings. (*Id.* at 20).

Next, the ALJ properly found Dr. McLain's opinions conflicted with the record as a whole. As the ALJ notes, Dr. McLain's findings were inconsistent with the relatively benign

findings of Dr. Iyer, as well as the plaintiff's own descriptions of her daily living activities. (R. 20-21). Furthermore, Ms. Richardson testified she did not seek continuing treatment for her pain and that she took no prescription medication. (R. at 20). Indeed, Ms. Richardson stated her symptoms were relieved by over-the-counter medication. (*Id*.). The ALJ properly found these circumstances were inconsistent with the pain and limitations Dr. McLain described. This leads to the conclusion that Dr. McLain's evaluation was based largely on Ms. Richardson's own subjective report, which only serves to decrease the amount of deference due. Comprehensive as Dr. McLain's report may be, the ALJ did not err in assigning it less weight based on its deviation from Dr. McLain's own objective findings and the rest of the record as a whole.

The ALJ also properly afforded greater weight to Dr. Iyer's opinions. Dr. Iyer examined the plaintiff in October 2012 at the request of Disability Determination Service. (R. 211). Dr. Iyer noted Ms. Richardson had a normal bearing, could stand unaided, was able to walk on her heels and toes, and was able to squat. (R. 212). Dr. Iyer also found Ms. Richardson had full range of motion in her joints, as well as full muscle strength; he concluded she did not have any significant physical limitations. (*Id.* at 212-13). As the ALJ noted, Dr. Iyer's opinion on the plaintiff's limitations was consistent with Dr. Iyer's own objective findings, the plaintiff's reported activities of daily living, and Dr. McLain's objective x-ray results. (*Id*. at 20, 168-178, 212, 238-39). Thus, the ALJ did not err in affording Dr. Iyer's opinion greater deference in determining the plaintiff's RFC.

For the foregoing reasons, the ALJ properly weighed the opinions of Dr. McLain and Dr. Iyer, and his evaluation of the opinions was in accord with applicable law.

### B.     The ALJ's Determination of Ms. Richardson's RFC

Ms. Richardson asserts the ALJ improperly evaluated her RFC.  Specifically, the plaintiff alleges that "if [she] possessed a residual functional capacity for no more than sedentary work versus the light work identified by the ALJ, there would have been a vastly different result in this case."  (Doc. 11 at 13).  According to Ms. Richardson, if her RFC was properly evaluated as allowing no more than sedentary work, the ALJ would not have been able to conclude she could return to her past relevant work as a poultry trimmer and would have been required to evaluate Ms. Richardson's case under the final step of the sequential evaluation.  (*Id.*)

An RFC is the most a claimant can still do in spite of the physical and mental disadvantages resulting from her impairments.  *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).  As previously noted, while the Commissioner considers opinion evidence, the determination of a claimant's RFC is reserved to the Commissioner; it is a dispositive administrative finding that controls the determination of disability.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  The ALJ bears the responsibility of assessing a claimant's residual functional capacity based on all of the relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c), 416.927(d)(2), 416.946(a); *see Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014).  Relevant evidence, medical and otherwise, includes medical assessments, medical reports, and descriptions and observations of the claimant's limitations by the claimant and others.  *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The ALJ may consider the claimant's daily activities when determining the RFC.  *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987).

Ms. Richardson contends "the more comprehensive [and credible] evidence of record established that the plaintiff could not sustain competitive employment at all."  (Doc. 11 at 6).

Despite this assertion, the ALJ correctly identified substantial objective medical evidence in support of his RFC finding. To begin, the ALJ took into account March 2012 medical records from the Coosa Valley Medical Center which stated Ms. Richardson had mild tenderness in her right knee, full strength in her major muscle groups, and full range of motion in her neck. (R. 17, 200). In the report, the plaintiff described her pain as mild and stated she was independent in her daily living activities. (*Id*. at 200, 204). Two examinations from Quality of Life Health Services in April 2012 and March 2013 revealed similar findings, namely that the plaintiff had normal range of motion in her joints, normal muscle strength, and stability in her extremities with no pain. (*Id.* at 224, 231).

Another examination by the Coosa Valley Medical Center in September 2012 showed the plaintiff had full muscle strength, normal gait, and full range of motion in her spine despite tender paraspinal muscles. (R. 193). Again, the plaintiff was noted to be independent with her daily living activities. (*Id*. at 197). As noted above, the ALJ also took into account Dr. Iyer's October 2012 findings, which noted the plaintiff had a normal gait, full range of motion in all of her joints, and full muscle strength. (*Id.* at 17-18, 212). While the ALJ properly afforded little weight to the opinions of Dr. McLain, the ALJ did consider and give great weight to the x-rays of the plaintiff taken by Dr. McLain. (*Id*. at 20). These x-rays revealed Ms. Richardson had a normal lumbar spine and SI joint, as well as mild to moderate osteoarthritis of the plaintiff's hips and knees. (*Id*. at 238-39).

The ALJ also considered Ms. Richardson's reported activities of daily living, which revealed that she had no problem with personal care. (R. 19, 169). Furthermore, Ms. Richardson stated she prepared her own meals, did laundry and the dishes, cleaned her house, shopped, and drove an automobile. (*Id*. at 19, 170-71). Finally, the ALJ noted Ms. Richardson's medical

treatment was conservative in nature and that she had not sought any medical treatment since April 2013. (*Id*. at 20, 33, 235).  While concluding Ms. Richardson was limited to light, unskilled work, the ALJ further limited the RFC by excluding any work involving climbing, balancing, exposure to unprotected heights or hazardous machinery, and more than occasional stooping, kneeling, crawling, or using ramps and stairs. (*Id*. at 20).

For the foregoing reasons, the ALJ did not err in determining Ms. Richardson's RFC. While Ms. Richardson has pointed to evidence in support of her position, substantial evidence supported the ALJ's conclusion. Additionally, the ALJ's determination of Ms. Richardson's RFC was in accord with applicable law.

### IV. Conclusion

Upon review of the administrative record, and considering all of Ms. Richardson's arguments, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  Accordingly, the Commissioner's decision is due to be affirmed.

A separate order will be entered.

**DONE** this 17th day of September, 2015.

_____
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE